case United States versus Hassan. Mr. McBeth. Thank you, Your Honor, and good afternoon. My name is Colin McBeth, and I represent the appellant Christopher Hassan. Your Honors, in Johnson v. United States in 2015, and again in Sessions v. DiMaia in 2018, the Supreme Court made clear that a defendant may bring a facial void for vagueness challenge, even if the statute is not vague as applied to his own conduct. In both those cases, the statute was not facially vague without considering or deciding whether the statutes were vague as applied to the particular litigants bringing the challenges. In fact, in footnote three of the DiMaia opinion, the majority noted that Justice Thomas, in dissent, believed that the statute was not facially vague because there were some people as to whom its application was clear, including the petitioner in that case. But the majority responded that the In other words, a defendant may attack a statute as facially void for vagueness, even if there are some cases in which it is clear, such as the defendant's own case. In short, what we call the own conduct principle is no longer good law. The district court held below, and the government argues here, that Johnson and DiMaia rejected the own conduct principle only with respect to statutes that require applying the categorical approach. But nothing in those opinions suggests the Supreme Court was announcing a one-time-only exception to the own conduct principle. Either the district court, nor the government, nor any of the cases the government cites, identifies any language in either Johnson or DiMaia that even arguably suggests the own conduct principle remains valid in non-categorical approach statute cases. And contrary to the government's argument, this court has never addressed or eliminated the own conduct principle. The defendants in United States v. Hosford and United States v. Morello did not argue that Johnson and DiMaia eliminated the own conduct principle. And this court, therefore, did not address that question. And as this court has said in United States v. Norman, which we cite in our brief, quote, judicial decisions do not stand as binding precedent for points that were not raised, not argued, and hence not analyzed. And so as a result, this court can consider Mr. Hassan's facial vagueness challenge to section 922G3 on the merits. As we explain in our brief, that statute fails to provide a person of ordinary intelligence with fair notice of what conduct is prohibited. The term unlawful user of a controlled substance, as construed by this court's cases, makes standards layered one on top of another. So according to this court, citing the Ninth Circuit's opinion in Purdy, defendant's drug use must be consistent, prolonged, and close in time to his gun possession. And this court has found that statutes employing similar language are void for vagueness. So for instance, probably the best example is this court's opinion in the Manning case, the Ambach-Manning case from two years ago, in which the statute at issue allowed an interdiction order to be entered against someone who was found to be a, quote, habitual drunkard. And this court looked at that language and said, we don't know what that means. What does it mean to be habitual? How frequently does someone have to use alcohol? What amount of alcohol does it have to be? None of those questions are answered by the statute. And the same is true here. Mr. McBeth, let's assume for the moment that we don't agree with you, that your client is entitled to make the challenge as broadly as you would like it, but instead has to limit the challenge with respect to his own conduct. So what is it about the defendant's own conduct here that poses a problem with respect to his conviction? So, Your Honor, we are not making an as-applied challenge. So for the purposes of this appeal, the court can assume that an as-applied challenge would fail. In the event that this case goes back to district court, I don't want to concede anything, but the court can operate on the assumption that there's no successful as-applied challenge here. But our position is that after Johnson and DiMaia, that just doesn't matter, because in both those cases, there were dissents where a justice said very clearly, facial challenges are only appropriate if the defendant's own conduct, if the statute is vague as applied to the defendant's own conduct. And in both cases, the Supreme Court disregarded that and moved on to the merits. And in DiMaia, it did more than just disregard it. It specifically said, we anticipated and rejected that argument in Johnson. And it doesn't matter if there are some cases where the statute is clear, including the defendant's own case. So people are allowed to bring facial challenges after Johnson and DiMaia, regardless of whether their own conduct is covered. And the Ninth Circuit's opinion in Kuzma, which we cite in our 28J letter, I think adopts that position. And in my 28J, I said that the Ninth Circuit was assuming that the own conduct principle doesn't apply anymore. But having reread the opinion, I think it actually goes farther than that. I think it actually does hold the position that we're urging here. Because it talks about the Johnson case, talks about DiMaia, talks about Davis, and then it drops a footnote and it says, the facial invalidations in these cases refute the government's assertion that outside the First Amendment context, only as applied vagueness challenges may be considered. So in other words, the Ninth Circuit there is noting that before Johnson, there was a limited exception to the own conduct principle for statutes that implicate First Amendment conduct. Excuse me, Bep, isn't there a difference with respect to saying on the one hand that a statute is constitutional, unless it's vague, and in all its applications, contrasted with whether or not a statute is constitutional with respect to someone's own conduct? Those are two separate things, don't you think? So they are. But as we say in our brief, the all its applications principle is the reason for, or the rationale for, the own conduct principle. I mean, they were historically linked to one another. And the Supreme Court's opinion in the village of Hoffman Estates makes this clear, whereas it recites the all its applications principle. And it says the rationale is evident. And then it goes on to say that to succeed in a facial challenge, you have to show that the statute has no core. It can't be applied to anyone. So in other words, if you can't show the statute is vague as applied to you, you necessarily can't show that it's vague in all its applications. And therefore, your facial challenge fails. So those two principles are related to one another. And now that Johnson has unambiguously discarded the all its applications principle, the own conduct principle goes with it, which again, the court recognized at least implicitly in Johnson, and I think explicitly in DiMaio. And, you know, Justice Thomas said in his dissent, this statute is clear as applied to this petitioner. In this case, it is not vague. Yes, Your Honor. Judge Rushing, isn't another principle underlying the own conduct principle, the idea that constitutional rights are personal, that one, you can't assert typically, except in unique cases, you can't be asserting the constitutional rights of other parties? Isn't that a separate foundation for the own conduct principle? So certainly there are, you know, prior Supreme Court cases that gesture at that idea. But I think it, you know, it doesn't, that they've never sort of used the word standing, but I guess that's sort of what they're gesturing at. But I think Johnson is recognizing that that doesn't really make sense because if a statute is facially vague, that means it cannot be applied to anyone. There are no cases in which it can be applied, including people as to whom it would be clear as applied. So if a statute can't be applied to anyone, then it makes sense that anyone should be able to bring a vagueness challenge against that statute. In other words, you know, if 922 G3 is in fact vague on its face, then it can't be applied to Mr. Hassan. And so because applying it to him would be illegal, would violate due process, he should be able to make that argument. I mean, the sort of alternative would produce pretty anomalous results. So, you know, if the government is right that you have to have a successful as applied challenge in order to essentially become redundant and superfluous, because if you can win an as applied challenge, then there's no reason you would bring a facial challenge, since you necessarily win anyway, just by winning the as applied. And so those challenges essentially become superfluous. And, you know, even if someone does bring one, you know, suppose someone other than Mr. Hassan brings a facial and as applied challenge, and the court holds that both are successful. At that point, the statute is void for vagueness on its face, and it can't be applied to anyone, including Mr. Hassan. And so we end up at the same place as if Mr. Hassan had brought the challenge, except that the only way we got there is that some unknown third party, you know, unforeseen to Mr. Hassan happened to bring a facial vagueness challenge that succeeded. And so in that case, the applicability of the statute turns on something, on some fortuity about who has and hasn't brought us a challenge before him, which seems like a very odd, very odd system. I mean, there's no logical reason to structure challenges that way. So I, you know, again, to the extent that the sort of standing aspect of this was, you know, an essential element of the own conduct principle, you know, Supreme Court would have been aware of that in Johnson and DiMaio. And it nevertheless proceeded to strike down those statutes as facially vague. If I could, I'd like to turn for a minute to the terrorism enhancements. And for the reasons we explained in our reply brief, we think we did adequately preserve this claim. And I'm happy to talk about that. But I think the more important point I'd like to make is that even if the court concludes that this claim was not preserved below and therefore plain error applies, we are still entitled to relief because the error in this case was plain. This is a clear case of interpreting statutory text in the 1996 directive. And that directive says that the commission should amend the guidelines so that the enhancement only applies to federal crimes of terrorism. A federal crime of terrorism, in turn, is defined as, quote, an offense that is a violation of an enumerated statute. So you put those two parts together and what you get is the enhancement only applies to a violation that is an offense, sorry, to an offense that is a violation of an enumerated statute. So if the defendant's offense is not a violation of one of those statutes, the enhancement cannot apply. And yet the commission, we're assuming for this appeal, the commission wrote the enhancement in such a way that it does reach people whose offenses are not violations of enumerated statutes. And that is flatly inconsistent with the text of the 1996 directive. There's no way to reconcile what the commission did with what Congress told the commission to do. And to the extent the court thinks the text of 1996 directive is at all ambiguous, the legislative history dispels the ambiguity entirely. The final conference report for AEDPA says in crystal clear terms that the commission is supposed to amend the guidelines so that the enhancement only applies to the listed crimes upon conviction for one of those crimes. And the commission obviously wrote the guideline more broadly than that. Mr. Hassan has not been... Mr. McBeth, I'm sorry, I missed that. Where is that? Where do you say that is? That's in the final conference report that was prepared before AEDPA's passage, which we cite in our brief, where the conference report says we are amending this guideline or directing the commission to amend the guidelines so that it only applies... So this section of the bill would make this guideline applicable only to those specifically listed federal crimes of terrorism upon conviction of those crimes. I mean, it's plain as day in the legislative history that Congress wanted a conviction for one of these crimes to be a predicate for application of the enhancement. And the government doesn't disagree with that. Their response brief makes absolutely no argument on the merits as to how this guideline is consistent with the text of the congressional directive. And even putting aside the legislative history, again, the statutory text is clear. It says it only applies to an offense that is a violation of one of these statutes. And here, none of Mr. Hassan's offenses was a violation of an enumerated statute. And nonetheless, the district court applied the enhancement. So that is erroneous. It's plainly so. There's no way to reconcile with what the commission did with the 1996 directive. And for that reason, the error is plain. And as we explain in our brief, the district court explicitly declined to say that it wouldn't impose the same sentence. So on plain error, that means that the third and fourth prongs of the plain error test are satisfied under Melina Martinez and Rosales-Morales. Mr. McBeth, we have to resort to a Senate conference report to divine what the intent of Congress was. That suggests that the language is less than clear, subject to some ambiguity. And if that's the case, why wouldn't we give some level of deference to how the commission interpreted it in revising the guideline? So you don't have to resort to the conference report. So I think the text is very clear. The 1996 directive says the guidelines should be amended so that the enhancement only applies to federal crimes of terrorism, as defined in 2332B. And then 2332B defines a federal crime of terrorism as, quote, an offense that is a violation of a certain statute. So in other words, put the two parts next to each other, what you get is the enhancement only applies to an offense that is a violation of these statutes. And I think that is very clear. I don't know how you can read that language to permit the commission to apply the guideline to people whose offenses are not violations of one of those statutes. Wasn't the primary purpose, or at least one of the purposes of Congress in this amendment, was to that the statute and the accompanying guideline would reflect that defendants would be on the hook for both domestic and international crimes of terrorism. And not, you know, that seems logical. And why would they then change the language that had been in existence for a good bit of time with respect to simply promoting those crimes without the need for a conviction? Why would that follow from that purpose? So there is additional legislative history, which is discussed in the dissent in the Graham case from the Sixth Circuit, in which Congress talks about how they realize that the term terrorism or terrorist is a very serious term to be attaching to someone. And so they actually want to be very careful about attaching that to someone unless the conduct in question really is terrorist conduct. This is in the, I believe it's in the House report to AEDPA, which we don't cite in our brief, but it's discussed in the Graham case. But anyway, in any event, even if that, you know, even if that wasn't their purpose, that still cannot override the plain text. I mean, to go back to the point that you were just making, Judge Diaz, you know, if we have to resort to the purpose of Congress, then, you know, that can't override the text. The text here says it only applies to an offense that is a violation of an enumerated statute. And the commission violated that direct order. If the enhancement is applying to people whose offenses are not violations of an enumerated statute, then it is inconsistent with what Congress ordered in the 1996 directive. And I see I'm running out of time, so if I may, I'd like to reserve the rest of my time for I think you're two minutes over. Yes, out of 16, but I'm sorry, Your Honor, I will stop there. Thank you. Mr. Windham? Thank you, Your Honor, and may it please the court. The defendant asks this panel to throw away decades of precedential and persuasive case law to chart its own course and to create a certain split in three different unique ways. First, the defendant would have the court disregard decades of Supreme Court jurisprudence and do away with the own conduct principle. Second, the defendant would have the court strike down a federal criminal statute, 18 U.S.C. 922 G3, that has been upheld by other courts to have considered the issue. And third, the defendant would have the court invalidate application of a sentencing guideline that has been applied in this circuit and others based on the district court's proper understanding. The court should disregard the defendant's imitation and should affirm the district court. I'd like to start on the first issue with respect to the facial bigness challenge to the section 922 G3 statute. The defendant simply cannot mount the facial challenge. The defense claims that it can bring the facial challenge based on Johnson, but for more than 50 years, the Supreme Court has ensured the defendant whose conduct falls squarely within the prohibitions of a statute cannot make a facial bigness challenge. Here, as we heard the defense state and which was not contested below, the defendant's conduct falls squarely within the statute. So the defense's argument in attempting to dismiss the all-its-applications principle and that the all-its-applications principle was the only rationale undergirding the separate own conduct principle. The defendant is wrong for a few different reasons. Some of these reasons, Judge Rushing, you touched on and Judge King, one of your questions, touched on. But first, I'd like to start with the fact that Johnson never claimed to make a broad pronouncement regarding the own conduct principle. Six years ago, as the court well knows, Johnson held that the residual clause of the Armed Criminal Act was unconstitutionally vague. Nowhere did it say and nowhere did it apply anything at all about the own conduct principle. That principle simply was not before the court. And as the defense acknowledges, it is a different principle than the all-its-applications principle. Indeed, the defendant in that case does not appear to be one whose conduct clearly fell within the prohibited range such that the own conduct principle would even come into play. And certainly none of the four opinions in that case touched on. The defense admits in its brief at page 31 and 32 that at least seven separate Supreme Court opinions going back to the 1960s discuss and rely on the own conduct principle. Presumably, the Supreme Court would have said something if it had intended to overrule several presidential opinions. And as the court knows, it is the Supreme Court's prerogative alone, not this court's prerogative, to overrule Supreme Court precedent. I will note also in Johnson at the end of it, the Supreme Court expressly disregarded, expressly overruled two other cases that were in the all-its-applications law, but said nothing about any of the other seven cases in its past regarding the own conduct principle. So that's the first reason as to why Johnson does not implicate the own conduct principle. But the second reason is that the own conduct principle is not so interrelated with the all-its-application notion that the former falls without the latter. The defense's argument that the two are essentially the same is reliant on a footnote in the Village of Hoffman case that predates Johnson by 33 years to argue that the own conduct principle is inextricably tied to the all-its-application principle. But other Supreme Court cases, including Broderick v. Oklahoma from 1975, discuss the more expansive rationale for the own conduct principle. And I would also point the court to this court's decision in Masi Endero in 2011, 638 F. 3rd 458, which discusses Broderick, which discusses the rationale for the own conduct principle. And essentially it expands on what Judge Rushing noted a moment ago, that essentially individual defendants can assert their own rights, but not other people's rights. But the language that Broderick uses says that the conclusion reflects the conviction that under our constitutional system, courts are not laws. And it's that language that shows up in other Supreme Court cases and in repeat Fourth Circuit case law, including the Masi Endero case. And so that's a separate rationale that is separate from the all-its-applications principle. That's why the own conduct principle applies. Now, this court has relied on the validity of the own conduct principle after Johnson. If Johnson really had been such a sea change, undoubtedly those two panels would have observed that sea change. The panel in Hossford in 2016, on which you sat, Judge Diaz, published an opinion relying on the own conduct principle to reach its conclusion that the defendant could not mount a facial bigness challenge to Section 922A1A's prohibition against unlicensed firearm dealing. And then just a few months ago, the panel in Moriello, on which you sat, Judge Motz, also relied on the own conduct principle to reach its conclusion that the defendant could not mount a facial bigness challenge to the administrative regulations under which she had been convicted. So this court, in general, should follow the Moriello panel and the Hossford panel in declining the defendant's attempts to take us beyond the facts of this case. Now, I will say that on the specific point of 922G3 and the own conduct principle, two other circuit courts have, post-Johnson, published opinions saying that the own conduct principle still survives. Those are cited and discussed extensively in the briefs, United States v. Cook in the Seventh Circuit, United States v. Bramer in the Eighth Circuit. And if I can just touch briefly on the case that the defense cited in the 20HA letter regarding out of the Ninth Circuit from last year. That case, and the defense noted, I believe, a small portion, maybe a footnote of that opinion, which implied otherwise. But that case was predated by the Ninth Circuit case in 2019, Casham v. Barr, where the parties actually briefed whether or not the own conduct principle survived Johnson. And in that case, the Ninth Circuit held that the own conduct principle does, in fact, survive Johnson. That's 941F358. So, in summary, with respect to this point, the Supreme Court never said that Johnson should be read so broadly. No court has read it so broadly. And the Fourth Circuit, on multiple occasions, has relied on the own conduct principle surviving Johnson. The moving to, unless your honors would like to hear a discussion as to why 922G3 itself is not unconstitutionally vague, I'd like to move to the 381.4 issue for the terrorism enhancement. The defense here, and the parties have briefed this, the defense never raised this issue below. We contend that the defense has invited the error, at the very least, that the defense agrees, based on the argument today, that plain error applies. I'll stick with arguing on plain error, while not conceding the invited error issue. In order to prove plain error, the defense would have to show that an error occurred, that the error was plain, and then the other two parts regarding substantial rights, and then the court's discretion as to whether or not the error seriously affected the proceedings below. Here, there was no error at all, and the error, if there was any, was not plain. I'd start with the 1994 Violent Crime Control and Law Enforcement Act, which is discussed in the opening brief of the appellant. And in that case, the... Mr. Windham, I'm sorry, can I ask a question about the standard of review? And I don't want to beat this dead horse, but you do concede that the defendant in this case made the general claim below that the enhancement shouldn't apply to him. He didn't make this precise argument, but he did lodge an objection to the application of the enhancement. Is that fair? Yes, Your Honor, that is fair. The defense below argued that, as a legal matter, the enhancement should not apply to him because somebody, whether it was the defendant or somebody else, should have been convicted of a federal crime of terrorism. And then also, the defense made the argument below that it should not factually apply to him. However, our argument with respect to invited error is somewhat different than the Robinson case that the defense relies on as to why this claim was preserved below. In Robinson, which was a case regarding an error in the calculation of the criminal history, the defense appears simply not to have made the argument at all, though it challenged generally the criminal history. Here, the defense affirmatively argued the opposite to the district court. And in this court, it appears that the defense is arguing that 3 of 1.4 is a nullity, should simply not exist because of the 1996 directive. So I think that for those reasons, the standard of review, if we had it, should be that the court should not hear this at all. But otherwise, the plain error should apply because not just it wasn't raised below, but the defense affirmatively argued the opposite. Well, just humor me for a moment. But if we think that we should just consider this issue de novo, you're ready to defend the statute on its merits, regardless of the standard. Is that fair? That's exactly right. And I would like to do so right now. I was doing so under the context of saying that there's no error, even under the plain error standard. But even under de novo review, here, I would point to a few things that are discussed in the defense brief, but some of which meet out some of the definitions of international terrorism and federal crimes of terrorism. So in 1994, in the Violent Crime Control and Law Enforcement Act, that is where Congress directed the Sentencing Commission to amend the guidelines to provide an enhancement for any felony, whether committed within or outside the United States, that involves or is international terrorism. Now, at the time, international terrorism was defined in the guidelines as 18 U.S.C. 2331, that's the definition of that statute, as violent acts or acts dangerous to human life that are a violation of any federal or state criminal law that appear to be intended to intimidate or coerce a civilian population, to influence the policy of a government by intimidation or coercion, or to affect governmental conduct through assassination or kidnapping. And third, to occur primarily outside the United States or to transcend national boundaries. So that's an extensive definition for allowing as a predicate the promotion of any crime at all, but it limits it geographically to outside of the United States. And it also discusses the coercion of the civilian population. Now, the definition of federal crime of terrorism is different. And in 19, so in 1995, the Sentencing Commission promulgated the guideline intended, excuse me, which discussed, discussed intending to promote international terrorism. But in 1996, what Congress said, and this is where use of the word only, I think, comes clear. As the, as the Sentencing Commission directed the Sentencing Commission to amend the only applies to federal crime of terrorism. So what does federal crime of terrorist, terrorist mean? It is not simply that now it's, it used to be international, and now it's not international. Though it expanded, though, federal crime of terrorism expands geographically, the definition of what falls within 3 and 1.4. It also narrows the band to some extent. So first of all, instead of it simply, the underlying crime simply being, you know, involving or intending to promote any crime whatsoever, federal or state, it had to apply to certain enumerated statutes under 2018 U.S.C. 2332b, subsection G5. And second, whereas international terrorism had as one of its core purposes, the coercion of a civilian population, federal crimes of terrorism are focused on governmental conduct under that statute and strip out the civilian population piece. So for those reasons, under the 1996 directive, the guideline could only be applied where the conduct involved or intended to promote an enumerated statute and also removed the coercion of the civilian population language. So on, with respect to the defense's point, Congress had meant otherwise and had meant to actually change what was already being applied in terms of intending to promote language. It would have said otherwise. That guideline was in existence in 1995 when Congress then in 1996 passed it. Now, if I could recommend to your honors that you review application note four to 3 at 1.4, because I think that that neatly summarizes what Congress did and what the commission believed could happen in those situations. So as the commission understood it, Congress was directing that 3 at 1.4 not apply to cases in which the offense was calculated to intimidate the government, but did not involve an enumerated statute or where the defendant committed an enumerated statute, but the purpose was to intimidate a civilian population. So basically what the sentence commission in application note four expressly discusses is a situation that the 1996 directive stripped out. And what the sentence commission says in that application note is that 3 at 1.4 no longer applies to those situations, does not apply to those situations. An upward departure might be warranted under the facts, but 3 at 1.4 does not apply. So on the plain language of the directive, for those reasons, it should have pulled any standard. And here I did note in the briefs that the fourth circuit has applied 3 at 1.4 in the Pencala case in 2008, where the defendant was not convicted of a federal crime. Mr. Windham, your colleague on the other side referenced a Senate conference report that seemed to align with his view of the statute, understanding that we wouldn't necessarily need to look there if we were satisfied that the language of the statute itself was clear. What do you make of that, of that language? I think first as a general rule of construction, you look to the plain language of the statute, your honor. And what we heard the defense concede today is that the language in the statute alone is plain. So for that reason, I don't think that the court should resort to the conference report. I guess if the court does think that there's any ambiguity, the court could look to the conference report. And as your honor indicated earlier, to the commission's promulgation of the guideline to see what the commission believed it meant. But I don't believe that the different language of the conference report, which talks about, I wouldn't say it's as clear, and this is the appellant's brief at page 56 is where the appellant cites the language. I wouldn't say it's as clear as the defense contends it is with respect to the conviction. It discusses expanding the scope of 301.4, whereas I've just discussed a moment ago, it does expand it geographically, but it does not expand it in terms of the crimes to which it can be applied, the enumerated statutes and the underlying intention of the defendant to intimidate civilian populations. The last piece with respect to 301.4, your honors, is the clear error, is that the defense contends that the district court committed a clear error for the reasons that we cite in our brief. We simply do not believe that's the case. This was hundreds of pages of briefing of all the arguments, extensive testimony, extensive cross-examination, and an extensive colloquy by the seasoned jurist on the bench who simply believed that the defense expert was not credible and cited the reasons why you believe that to be the case. If the court has no questions, I can't see Judge Rushing, but I wanted to pose that as well. But if the court has other questions, I'm happy to answer them. But otherwise, I would yield the rest of my time. Thank you. I don't think we have any further questions. Thank you, your honor. Thank you, your honors. A couple quick points. First is the government says that the plain language of the directive should govern here, and I completely agree with that. And the language is completely plain. It says the enhancement only applies to a federal crime of terrorism, which is an offense that is a violation of an enumerated statute. That is plain. The government has no response to the plainness of that language. If the defendant's offense is not a violation of an enumerated statute, the enhancement cannot apply, period. Whether the review is a plain error or de novo, it is clear as day that in the statute, the text of the statute, Congress is saying this only applies to offenses that are violations of enumerated statutes. There's no way to reconcile that with what the commission wrote. Second, to go back to a question that Judge Diaz asked earlier about, shouldn't we give some discretion to the Sentencing Commission to implement what it thinks is the most reasonable view of this language? The Sentencing Commission, in its reason for the amendment in 1996, said that it itself believed and agreed that the term federal crime of terrorism is broader than international terrorism. So the commission agreed that federal crime of terrorism is broader. Now, if the commission believed that, then Congress's use of the word only in the statute is doing nothing. Because if federal crime of terrorism is broader than international terrorism, it makes no sense to say that the enhancement only applies to the broader category of crimes. That's illogical. You would use the only to describe the narrower category of crimes. But the commission itself has agreed that federal crime of terrorism is broader. And so they effectively stripped the word only in the directive of any meaning whatsoever. And to go back to the conference report, this court and many others have said that the final conference report for a bill is the most reliable evidence of the statute's meaning after the text itself. Because it has to be agreed to by members of both houses and the conference committee and represents the consider view of both houses. And I honestly don't see what part of this report is ambiguous. The government says it's ambiguous, but it clearly says this section of the bill will make the enhancement applicable only to those specifically listed federal crimes of terrorism upon conviction of those crimes. I don't know how it could be any better, Your Honor. So even without that, though, the plain text of the directive makes it clear it cannot apply unless the defendant's offense is a violation of an enumerated statute. And finally, just to go back quickly to the vagueness issue, the government says that in Johnson, nobody raised the question of the own conduct principle. But that's not true. Justice is spatially vague if it's not vague as applied to the particular party. And the Supreme Court presumably read Justice Alito's opinion and disagreed. And even if this court thinks that sort of implicit rejection of that argument is not enough, in DiMaia, which the opposing counsel did not talk about at all, the rejection was explicit. The majority says, we note that Justice Thomas is saying that you can't strike this statute down as spatially vague because it's not vague applied here. And the majority says, no, we already anticipated and rejected that argument in Johnson. It doesn't matter if there are some cases, including the defendant's own case, in which the statute is not vague as applied. We strike the statute down anyway, regardless of that, because again, if a statute is vague on its face, that means it cannot be applied to anyone. It can't be applied even to people as to whom it's clear. So it makes sense that someone like a defendant who, let's say, is not vague in his case, can bring that challenge because it would be illegal to apply it to him if the statute is in fact vague on its face. And I see I'm out of time. So unless the court has any further questions, I'll stop there. Now, we appreciate both of your arguments. And I think we're ready to go on to our next case. Thank you. Thank you. Thank you.
judges: Diana Gribbon Motz, Albert Diaz, Allison J. Rushing